Boynton, J.
The judgment of the superior court was placed upon the ground that the conveyance from Drake to Mrs. Sargent was void, under section 17, as amended February 12, 1863 (S. & S. 397), of the act regulating the mode of administering assignments in trust for the benefit of creditors, and being so declared, that the fund arising from the sale of the property conveyed to her,inured to the benefit of the creditors of Samuel A. Sargent, to be distributed in accordance with the provisions of that section. It appears from the finding that at the time Clark conveyed the premises to Drake, Sargent was insolvent, and that the object of taking the conveyance in the name of Drake was to conceal Sargent’s interest in the property, and to hinder and delay his creditors in the collection of their debts. The same purpose was found to accompany the conveyance from Drake to Mrs. Sargent. Thomas A. Sargent never held the legal title. The question therefore arises whether *653 section 17 of the act above referred to operates upon conveyances made by a trustee Of the debtor, or is limited in its operation to conveyances made by the debtor himself. That section provides, that “ all transfers, conveyances, or assignments made with intent to hinder, delay, or defraud creditors, shall be declared void at the suit of any creditor, and the probate judge of the proper county, after any such transfer, conveyance, or assignment shall have been declared by a court of competent jurisdiction to have been made with the intent aforesaid, shall, on the application of any creditor, appoint an assignee, according to the provisions of this act, who, upon being duly qualified, shall proceed by due course of law to recover possession of all property so transferred, conveyed, or assigned, and administer the same as in other cases of assignments to trustees for the benefit of creditors.”
It was not the object of this provision of the statute to enlarge the class of transfers or conveyances, which section 2 of the statute of frauds declares “ shall be deemed utterly void and of no effect.” Its purpose was to supply a new remedy to creditors, by authorizing the fraudulent conveyance or transfer to be converted into an assignment at the suit of a creditor, and the fund to be distributed, if the creditors so elect, in the same manner as if the debtor had formally assigned the property conveyed for the equal benefit of all his creditors. But the conveyance, which lays at the foundation of the proceeding, and upon which alone the statute was designed to operate, is the fraudulent conveyance of the debtor himself. It has no - application to a conveyance made by a mere trustee of the legal title, although such conveyance is made at the instance of the cestui que trust or beneficial owner.
It is the same conveyance which the statute of frauds declares utterly void and of no effect, and which, being void, leaves the title, as between him and the creditor, in the fraudulent grantor. The judgment given in the court below, declaring the conveyance of Drake to Mrs. Sargent void, left the legal title in Drake; and if this conveyance *654 was one upon which, the statute operated, so was the one from Clark to Drake ; and if that were set aside, the title would revest in Clark. It does not help the matter to say that, although the conveyance is ineffectual to carry the estate to the grantee, it still is so far valid as'to divest the title of the grantor, and vest it in the assignee to be appointed by the probate court. It may be that no assignee will be appointed. The appointment can be made only upon the application of a creditor, and no application may be made.
It is also true that the court, declaring the conveyance void, may, where no assignee is appointed, proceed to execute the trust and distribute the fund, in accordance with the provisions of the statute. Conrad, v. Pancost, 11 Ohio St. 685. This, however, the parties to the suit may not desire. The fraudulent conveyance having been adjudged void, and the cloud thereby cast on the title of the grantor removed, the creditors attacking the conveyance may be quite content to be left to their remedy by execution. Where this is the case, and the action goes no further, the title remains in the grantor, and the property may be seized and subjected to the payment of his debts, precisely as if no conveyance had been made.
That the statute was designed to operate exclusively upon fraudulent transfers and conveyances made by the debtor himself, is not only clear upon principle, but is well sustained by authority.
In Bump on Fraudulent Conveyances, 262, the author, in commenting on the object of the statute, says: It “ intends simply to guard a creditor from the fraudulent attempt of his debtor to delay, hinder, or defraud him in the recovery of his debt, by disposing of the property which he would have a right to seize as soon as he obtains a judgment.” And, on the exact question involved in the present controversy, the author remarks: “At one time, there was some question whether creditors could reach property which was paid for by the debtor, when the title was fraudulently conveyed by the vendor to another. The statute makes all *655 fraudulent conveyances void; but if such a transfer were void, the title would remain in the grantor, and, consequently, the creditors could not seize the property. Such a contrivance is manifestly not within the provisions of the statute.” Id. 265.
In Gowing v. Rich, 1 Ired. 553, land was purchased by A. , but the title was made to her daughter, B. The land was levied on as the property of A., and the court instructed the jury that if A. bought the land, and placed the title in B. , for the purpose of defeating her creditors in the collection of their debts, the conveyance was within the statute of frauds, and void, and the levy therefore valid.
The reviewing court held the instruction to be erroneous, saying: “ Where the estate was once in the debtor, and has been conveyed by him in trust for himself, the redress of the creditor is plain at law. lie may treat the conveyance as fraudulent, and null ab initio, under the act of 13 Eliz. (Rev. Stat., ch. 50, § 1), and therefore as leaving the legal title in the debtor. But this is invoking a statute which is not applicable to a case like that before us; which is not of a conveyance, by a debtor, of land before owned by her, but that of a purchase by the debtor and a conveyance to a trustee for her. That the statute of Elizabeth does not apply to the case of a purchase by the debtor is clear from the consideration that it operates entirely by making void the assurances within its purview. In this case, that would leave the title in the vendor, which would not serve the plaintiff’s purpose. As has been already mentioned, however, before the statute 29 Charles II, purchases were daily made in England in the name of trustees ; and, though equity found means of paying out of the estate the debts of the person, who, in the view of that court, was the owner, yet the purchase and conveyance to the trustee were never deemed within the statute of Elizabeth, so as to subject the land to a legal judgment and execution.”
The same construction was adopted in Gray v. Faris, 1 Yerg. 155, the court holding, that “ the act declaring every *656 conveyance void, if made with intent to hinder and delay creditors, means creditors of the grantor.”
To test the question of the application of the statute to a case like the present, let it be supposed that Clark, after Sargent was entitled to a conveyance, had retained the legal title at the latter’s request. In' such case, there would have been no'conveyance or transfer of the title for the statute to affect or operate upon. Yet the same relation would have existed between Clark and Sargent that existed between Drake and Sargent, after Drake succeeded to the legal title. Nor were the relation of the creditors of Sargent to the property, and their right in equity to subject it to the payment of their claims against him, in the least affected by a change in the person holding the legal title. Whoever received it by voluntary conveyance, held it subject to the undoubted right of Sargent’s creditors to subject the property to the payment of their debts by the ordinary process afforded by courts of equity, where the remedy at law proves inadequate.
It follows, that the court erred in holding the conveyance from Drake to Mrs. Sargent to be within section 17 of the act regulating the mode of administering assignments in trust for the benefit of creditors, and that McMillan and wife and Shorten obtained no lien upon the premises over the general creditors, and that neither obtaiued any priority over the other.
The conclusion reached by the court below, rendered it unnecessary to determine the priority of liens, and for that reason the findiug of facts may not be as full as it otherwise would have been.
There is no finding respecting Shorten’s knowledge of the attachment lien of McMillan and wife, or of Thomas A. Sargent’s interest in the premises conveyed, at the time he took his mortgage. And, while it is found that the consideration of Shorten’s mortgage was a pre-existing debt, and that no money or other valuable consideration was paid, we are left in doubt whether an extension of *657 time for the payment of such debt formed any part of the-consideration of the mortgage deed. And without any intimation as to the effect of such facts, or the want of them,, we think the question involved between the parties claiming the fund to be distributed, can be better determined: when the same are ascertained.
Judgment reversed and cause remanded.